Civil Action No. 22-cv-00040 (PGG)

# IN THE

# United States District Court

## FOR THE

## SOUTHERN DISTRICT OF NEW YORK

◆◈◆

IN RE BEN ZION KOZUCH,

DEBTOR.

EITAN LIEL,

PLAINTIFF-APPELLANT,

—AGAINST—

BEN ZION KOZUCH,

DEFENDANT-APPELLEE.

ON APPEAL FROM ORDER DISMISSING ADVERSARY
PROCEEDING IN THE UNITED STATES BANKRUPTCY
COURT FOR THE SOUTHERN DISTRICT OF NEW YORK
ADVERSARY PROCEEDING CASE NO. AP20-01206 (CGM)
CHAPTER 13 CASE NO. 20-11252 (CGM)

## BRIEF FOR APPELLANT

KARLINSKY LLC

MARTIN E KARLINSKY, ESQ.

BONNIE H. WALKER, ESQ.

103 MOUNTAIN ROAD

CORNWALL-ON-HUDSON, NEW YORK 12520

OFFICE: 646.437.1430

MOBILE: 917.623.9102

MARTIN.KARLINSKY@KARLINSKYLLC.COM

*ATTORNEYS FOR PLAINTIFF-APPELLANT*

REPRODUCED ON RECYCLED PAPER

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

Jurisdictional Statement and Statement of Timeliness ...................................................... 1

Standard of Review and Questions Presented .................................................................... 2

STATEMENT OF THE CASE .............................................................................................. 4

    Facts ............. ............................................................................................................ 4

    The Decision and Order of the Bankruptcy Court ........................................................ 8

    Summary of Argument ................................................................................................ 10

ARGUMENT ...................................................................................................................... 14

    POINT I  --   THE 1992 DISCHARGE IS INEFFECTIVE AGAINST LIEL
                 FOR LACK OF DUE PROCESS .................................................... 14

        A.   Notice is the Cornerstone of Due Process. .................................................... 14

        B.   The Bankruptcy Court Improperly Relied on a Presumption of
        Receipt of Allegedly Mailed Documents without Proof of Mailing .................... 16

        C.   The Authorities Cited by the Bankruptcy Court Do Not Support the
        Conclusion that Liel was Afforded Notice and Due Process .............................. 20

    POINT II   --   PRINCIPLES OF INTERNATIONAL COMITY AND
                 COLLATERAL ESTOPPEL BAR KOZUCH FROM
                 RELITIGATING THE ISSUE OF FRAUD ................................. 23

        A.   Principles of International Comity Compel Recognition of the 1993
        Judgment. ...................................................................................................... 23

        B.   Issue Preclusion (or Collateral Estoppel) Principles Bar Kozuch from
        Relitigating the Issue of Fraud. ...................................................................... 26

        C.   The Adjudication of Fraud Prevents Discharge under Section
        523(a)(2)(A) of the Bankruptcy Code ............................................................. 28

    POINT III  --   THE COURT PLAINLY ERRED IN APPLYING CPLR §§
                 5303(d) AND 5303(c) TO BAR ENFORCEMENT OF THE 1993
                 JUDGMENT .................................................................................. 29

        A.   11 U.S.C. § 108 Tolls The Limitations Period of the 2021
        Amendment to CPLR § 5303(d). .................................................................... 29

        B.   The Bankruptcy Court Erred in Holding that CPLR § 5302(c) and
        Federal Rule of Civil Procedure 44.1 Placed the Burden on Liel to Prove
        that the 1993 Judgment Remained Enforceable under Israeli Law. ..................... 31

CONCLUSION ................................................................................................................... 35

# TABLE OF AUTHORITIES

## Cases

*Badio v. Liberty Mut. Fire Ins. Co*., 12 A.D.3d 229, 785 N.Y.S.2d 52 (1st Dep't 2004)............. 20

*Bugliotti v. Republic of Argentina,* 952 F.3d 410 (2d Cir 2020) .................................. 34

*Chevron Corp. v. Naranjo*, 667 F.3d 232 (2d Cir. 2012) ............................................. 33

*Curley v. AMR Corp.,* 153 F.3d 5 (2d Cir. 1998) .......................................................... 34

*D.M. Rothman & Co., Inc. v. Korea Commercial Bank of New York*, 411 F.3d 90 (2d Cir. 2005) ................................................................................................................. 20

*D'Agostino v. Walker (In re Walker)*, 125 B.R. 177 (Bankr. E.D. Mich. 1990) ......................... 21

*Davis v. SpeechWorks Int'l, Inc.,* No. 03–CV0533S(F), 2006 WL 2828856 (W.D.N.Y. Sept. 29, 2006) ......................................................................................................... 4

*DPWN Holdings (USA), Inc. v. United Air Lines, Inc.,* 871 F.Supp.2d 143 (E.D.N.Y. 2012)........................................................................................................................ 15

*Fairchild, Arabatzis, & Smith, Inc. v. Prometco*, 470 F.Supp. 610 (S.D.N.Y. 1979) ................. 24

*First Am. Health Care of Ga.,* 220 B.R. 720 (Bankr. S.D. Ga. 1998)......................................... 15

*Hagner v. U.S.*, 285 U.S. 427, 52 S.Ct. 417, 76 L.Ed. 861 (1932)................................................ 18

*Hilton v. Guyot*, 159 U.S. 113, 16 S.Ct. 139 (1895)..................................................................... 23

*In re Aktiebolaget Kreuger & Toll*, 20 F.Supp. 964 (S.D.N.Y. 1937)......................................... 23

*In re AMR Corp*., 610 B.R. 434 (Bankr. S.D.N.Y. 2019), *aff'd*, 834 Fed. App'x 660 (2d Cir. 2021) ......................................................................................................... 2

*In re Borders Group, Inc.,*462 B.R.48 (Bankr. S.D.N.Y. 2011)..................................................... 17

*In re Bucknum*, 951 F.2d 204 (9th Cir. 1991) ............................................................................... 17

*In re Druckemiller*, 177 B.R. 859 (Bankr. N.D. Ohio 1994).......................................................... 28

*In re Grumman Olson Indus.*, 467 B.R. 694 (S.D.N.Y 2012) ......................................................... 14

*In re Hampton*, 550 B.R. 773 (Bankr. E.D. Ark. 2016).................................................................. 28

*In re Heyward*, 15 B.R. 629 (Bankr. E.D.N.Y. 1981) ................................................. 9, 10, 20, 21

*In re Ishihara Chem. Co,, Ltd.* 121 F.Supp.2d 209 (E.D.N.Y. 2000)........................................... 34

*In re Lerner,* 515 B.R. 26 (Bankr. E.D.N.Y. 2014) ............................................................... 15, 18

*In re Lyondell Chem. Co.,* 543 B.R. 428 (Bankr. S.D.N.Y. 2016) ............................................... 34

*In re Massa*, 187 F.3d 292 (2d Cir. 1999) ............................................................ 15, 22

*In re Maya Construction*, 78 F.3d 1395 (9th Cir. 1996) *cert. denied*, 519 U.S. 862, 117 S.Ct. 168 (1996) ............................................................................................... 16

*In re Momentum Mfg. Corp*., 25 F.3d 1132 (2d Cir. 1994) ........................................ 2

*In re Red Dot Scenic, Inc.,* 313 B.R. 181 (Bankr. S.D.N.Y. 2004) ........................... 26

*In re U.S.H. Corp. of N.Y.*, 223 B.R. 654 (Bankr. S.D.N.Y. 1998) .......................... 14

*In re Worldcom, Inc*., 2005 WL 3875192 ................................................................ 18

*Lakah v. UBS AG*, 996 F.Supp. 2d 250 (S.D.N.Y. 2014) ........................................... 4

*Lawlor v. Nat'l Screen Serv. Corp,* 349 U.S. 322, 75 S.Ct. 865, 99 L.Ed. 1122 (1955) .............. 12

*Mast v. Ill. Centr. R. Co.,* 79 F.Supp. 149 (N.D. Iowa 1949) .................................. 17

*Matter of Garthe*, 58 B.R. 62 (Bankr. M.D. Fla.1986) ............................................ 28

*Owusu v. New York State Ins*., 655 F.Supp. 2d 308 (S.D.N.Y. 2009) ....................... 20

*Purdy v. Zeldes,* 337 F.3d 253 (2d Cir. 2003) .......................................................... 26

*Tahan v. Hodgson*, 662 F.2d 862 (D.C. Cir. 1981) .............................................. 25, 26

*Trikona Advisers Limited v. Chugh*, 846 F.3d 22 (2d Cir. 2017) ....................... 24, 25, 27

*Union Pacific R. Co., Inc. v. U.S.,* 524 F.2d 1343 (Cl. Ct. 1975) ............................. 17

**Rules**

11 U.S.C. § 108 ............................................................................. 13, 29, 30, 31

11 U.S.C. § 362 ................................................................................. 13, 19, 30

11 U.S.C. § 523(a)(2)(A) ............................................................................ *passim*

11 U.S.C. § 523(a)(3) ...................................................................................... 9

28 U.S.C. § 1334(a) ........................................................................................ 1

28 U.S.C. § 157(a) .......................................................................................... 1

28 U.S.C. § 157(b)(2)(1) .................................................................................. 1

28 U.S.C.§ 158(a)(1) ....................................................................................... 2

CPLR § 5302(c) ................................................................................. 10, 13, 31

CPLR § 5303(d) .......................................................................................... 3, 10

Fed. R. Evid. 301 ........................................................................................... 17

Fed. R. Evid. 604 ............................................................................................. 4

Federal Rule of Bankruptcy Procedure 7056 .......................................................... 1, 8

Federal Rule of Bankruptcy Procedure 8002(a)(1)............................................................ 2

Federal Rule of Bankruptcy Procedure 8018(a)(1)............................................................ 2

Federal Rule of Bankruptcy Procedure 8018(d) ............................................................... 1

Federal Rule of Bankruptcy Procedure 9017................................................................... 10

Federal Rule of Civil Procedure 44.1 ................................................................... *passim*

Federal Rules of Bankruptcy Procedure 7001(6).............................................................. 1

Federal Rules of Bankruptcy Procedure Rules 7001(4) ................................................... 1

**Other Authorities**

On Linkage and Revaluation, https://www.cambridge.org/core/journals/israel-law-review/article/abs/on-linkage-and-revaluation/79646315D00C79A2D6607EC92E6A3B7E  (February 12, 2016)........................ 5

## Jurisdictional Statement and Statement of Timeliness

On May 22, 2020, defendant-appellee Ben Zion Kozuch ("Kozuch") commenced a Chapter 13 bankruptcy case in the United States Bankruptcy Court for the Southern District of New York.  (*In re Kozuch*, U.S. Bankruptcy Court, Southern District of New York, 20-11252-cgm, ECF Docket Entry 1.)  On August 12, 2020, plaintiff-appellant Eitan Liel ("Liel") timely commenced an adversary proceeding against Kozuch in the same court objecting to the discharge of a scheduled debt.  (A10-14)[1]  The bankruptcy court had subject matter jurisdiction under 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a), and the Standing Order of Reference signed by Chief Judge Loretta A. Preska dated January 31, 2012.  As an objection to discharge of a debt, the adversary proceeding was a "core proceeding" under 28 U.S.C. § 157(b)(2)(1).

The adversary complaint, under Rules 7001(4) and 7001(6) of the Federal Rules of Bankruptcy Procedure and relying on 11 U.S.C. § 523(a)(2)(A) (fraud exception to discharge), contested Kozuch's discharge from a debt to Liel that in July 1993 in an Israeli court was reduced to a tort judgment for fraud (the "1993 Judgment").  By decision dated December 13, 2021, the bankruptcy court denied Liel's motion for summary judgment pursuant to Federal Rule of Bankruptcy Procedure 7056 and granted summary judgment in favor of Kozuch.  (A187-97)  By order dated December 20, 2021 and entered December 21, 2021, the bankruptcy court dismissed the adversary proceeding.  (A198-99)  That order is a final order of the bankruptcy court.

---

[1] References to the appendix filed with this Court as required by Federal Rule of Bankruptcy Procedure 8018(d) are preceded by the letter "A" and are cited in this brief as ("A___").  Certain references to documents filed with the bankruptcy court in the adversary proceeding are preceded by the letters "AP ECF" and are cited in this brief as ("AP ECF___").

This appeal timely followed on December 30, 2021 (A200-12).  *See* Federal Rule of Bankruptcy Procedure 8002(a)(1).  Liel filed an amended notice of appeal on January 3, 2022 (A213-26) and, on January 12, 2022, his designation of the record on appeal and statement of issues on appeal.  (AP ECF 42)  On January 25, 2022, Kozuch filed a counter designation and statement.  (AP ECF 44)  The clerk of the bankruptcy court transmitted the record on appeal to this Court on February 1, 2022, noting that the record was available electronically.  (AP ECF 45)  This opening brief is accordingly timely filed as of March 3, 2022, that is, within 30 days after the docketing of notice that the record has been transmitted or is available electronically.  *See* Federal Rule of Bankruptcy Procedure 8018(a)(1).

As this is an appeal from a final order of the bankruptcy court, this Court has subject matter jurisdiction under 28 U.S.C.§ 158(a)(1).

## Standard of Review and Questions Presented

"The bankruptcy court's legal conclusions are evaluated de novo; its findings of fact are subject to a clearly erroneous standard."  *In re Momentum Mfg. Corp.*, 25 F.3d 1132, 1136 (2d Cir. 1994) (citing *In re PCH Assoc.*, 949 F.2d 585, 597 (2d Cir. 1991)).  *See also In re AMR Corp.*, 610 B.R. 434, 444 (Bankr. S.D.N.Y. 2019), *aff'd*, 834 Fed. App'x 660 (2d Cir. 2021).  We evaluate each question separately to apply the correct standard.

1. Whether the bankruptcy court erred in giving effect to a discharge Kozuch received in 1992 (the "1992 Discharge") from the U.S. Bankruptcy Court for the District of New Jersey (*In re Kozuch*, U.S. Bankruptcy Court, District of New Jersey, Docket 91-26045) (the "New Jersey Bankruptcy Case") to discharge Kozuch's debt to Liel where Liel never had and was never given notice of the New Jersey Bankruptcy Case and was not afforded a timely opportunity to appear and object to discharge.  This is a mixed question of law and fact.

2.  Whether the bankruptcy court erred in relying on a presumption that notice of the New Jersey Bankruptcy Case had been given to Liel without proof of mailing of notice and based solely on a finding that Liel's name and address had been listed on a schedule in the New Jersey Bankruptcy Case where the totality of the circumstances plainly indicated that Liel was not provided notice of the New Jersey Bankruptcy Case and had no opportunity to object to discharge.  This is a mixed question of law and fact.

3.  Whether the bankruptcy court erred in declining, under principles of international comity and *res judicata* (preclusion), to recognize the 1993 Judgment establishing that Kozuch had committed a fraud and deceit against Liel, and that would, if recognized, prevent discharge under 11 U.S.C. § 523(a)(2)(A) of the debt Kozuch owed to Liel.  This is a mixed question of law and fact.

4.  Whether the bankruptcy court erred in concluding that Section 5303(d) of the New York Civil Practice Law and Rules would bar enforcement of the 1993 Judgment because it had been rendered more than twenty years ago, and because Liel had not proven that the judgment was still effective under Israeli law.  This is a question of law.

5.  Whether the bankruptcy court erred in considering Israeli law where neither party gave notice under Federal Rule of Civil Procedure 44.1 of intent to raise an issue of such law and where the court, not finding such law itself, placed the burden on Liel of proving that the 1993 Judgment was still enforceable in Israel.  This is a question of law.

## STATEMENT OF THE CASE

### Facts

In 1990, Liel, a citizen of Israel, commenced an action against Kozuch in the Tel Aviv-Yafo (Israel) Magistrate's Court ("Magistrate's Court").[2]  Liel's claims arose from Kozuch's failure to remit significant proceeds from diamonds Liel had consigned to Kozuch for sale on his behalf.  He sought judgment against Kozuch in tort for fraud and deceit—that is, for money obtained by false pretenses, false representations, and actual fraud.  (A10-14).  In his statement of claim, Liel contended that Kozuch "intended to deceive [him] and betray [his] trust," and that at the time Kozuch promised to remit the proceeds from the sale of diamonds to Liel he "knew  . . . he would not be able to "perform the promise."  He alleged also that Kozuch had promised that "the money from the sale of the diamonds [Liel had consigned to him] would not be mixed with [Kozuch's] other business activities."  *Id*. at ¶ 6.  This, too, Liel alleged, was a false promise.

By the 1993 Judgment (dated July 6, 1993), the Magistrate's Court sustained Liel's claims and rejected Kozuch's defenses after a hearing in which it heard testimony from Liel and several other witnesses.[3]  With respect to Liel's contentions of fraud, the Magistrate's Court made a finding that "[a]n act of deception and fraud was perpetrated against [Liel]" by Kozuch.

---

[2] *Eitan Liel and East Diamonds Ltd. v. Benny Kozuch*, Magistrate's Court, Tel Aviv-Yafo (Israel), No. CC 17126/90.  (A15-28)  Liel and Kozuch had served as fighter pilots in the Israeli Air Force (IAF) (although they did not know each other while in service and were introduced only later by an IAF mutual acquaintance).  Liel testified at the trial of the case that their both having served in the IAF was a factor in his believing Kozuch's misrepresentations.  *Id*. at 10.

[3]  The 1993 Judgment and other relevant Israeli court documents (as well as two stamps placed on another document by the Israeli Consulate in New York) were in Hebrew, the language of the courts of Israel. Translations are in the record, certified as accurate by a professional Hebrew-English translator.  (A28; 64; 88)  Under Federal Rule of Evidence 604, a translator's certificate is sufficient to render a translated document admissible in a U.S. court.  *See*, *e.g.*, *Lakah v. UBS AG*, 996 F.Supp. 2d 250, 258 (S.D.N.Y. 2014) (applying Fed. R. Evid. 604 to translated foreign documents).  *See also Davis v. SpeechWorks Int'l, Inc.,* No. 03–CV0533S(F), 2006 WL 2828856, at *2–3 (W.D.N.Y. Sept. 29, 2006) (same).

(A25)  The Magistrate's Court further accepted Liel's contention that Kozuch lied to him and misrepresented his intentions when he promised Liel that he would keep "sales proceeds [from the sale of Liel's diamonds] separate from [Kozuch's] other business activities."  (A16; 18)  The court rejected Kozuch's defenses, finding that they "were unsubstantiated and did not rely on any evidence."  (A21)  Kozuch had a full and fair opportunity to litigate the Magistrate Court's proceeding.  He engaged Israeli counsel on his behalf who actively litigated the case, including defending at trial.  Kozuch was afforded the opportunity to testify at trial, but declined to do so.  (A23)

The court entered judgment against Kozuch and in favor of Liel and East Diamonds Ltd., jointly and severally, in the principal amount of NIS (New Israeli Shekels) 256,906, plus attorney's fees and costs of NIS 23,000 (totaling 279,906 NIS), plus VAT (value added tax) at the rate of value as of the date of the judgment, plus compound interest and linkage under Israeli law.  The principal amount of the 1993 Judgment was US $118,938.30.  (A27)[4]

After the judgment was final, Liel initiated enforcement proceedings in the Tel Aviv-Yafo District Court (the "District Court").  (*See* A56-64)  In December 1997, almost six years after the 1992 Discharge was granted, Kozuch finally advised the Execution Office of the

---

[4] Kozuch appealed the 1993 Judgment to the Tel Aviv-Yafo District Court, which affirmed.  Kozuch sought leave to appeal to the Supreme Court of Israel.  Leave was denied, and the 1993 Judgment became final.  (A51-52)  Kozuch failed to pay the judgment.  (A52)  The present amount of the judgment, over US $2.63 million, is comprised of principal, interest thereon for almost 29 years (compounded under Israel law), and "linkage," an amount added to a judgment under Israeli law by indexing the original principal amount to cost of living and other applicable adjustments.  (A52)  *See* On Linkage and Revaluation, https://www.cambridge.org/core/journals/israel-law-review/article/abs/on-linkage-and-revaluation/79646315D00C79A2D6607EC92E6A3B7E  (February 12, 2016).  Liel filed a proof of claim therefor in the Chapter 13 case on July 30, 2020.  *In re Kozuch*, U.S. Bankruptcy Court, Southern District of New York, 20-11252-cgm, Claims Register 9-1.)

District Court that he had received a discharge of his debt to Liel in January 1992.[5]  (*See* A65-66)  He argued that the 1992 Discharge should be "recognized and implemented" in Israel and as such would void the 1993 Judgment.  By judgment dated May 4, 1999, the District Court rejected Kozuch's arguments and refused to stay enforcement.  (A52)

Kozuch appealed that judgment to the Supreme Court of Israel, where his appeal was heard by a three-judge panel.  By written opinion and judgment dated April 2, 2001, the court unanimously affirmed the judgment of the District Court, refusing to enforce the 1992 Discharge.  (A56-64)  Two of the justices were of the view that Kozuch's defense was in the nature of a claim, under the Israel Foreign Judgments Enforcement Law, to enforce the 1992 Discharge in order to bar enforcement of the 1993 Judgment.  *Id.*  They concluded that since Kozuch had failed to present the 1992 Discharge within five (5) years after its entry, Section 5 of that law prohibited enforcement.  *Id.*[6]

Kozuch also sought to persuade the Supreme Court that he had "attached the [1992 Discharge] to his affidavit when the hearing was conducted before the Magistrate's Court . . . ." *Id.*  Kozuch explained that he "did not argue its [the discharge order's] validity at that time since he denied the existence of the debt." *Id.*  The court rejected that contention, and in discovery in

---

[5] The Court may take judicial notice from the still-available electronic docket cover sheets that the New Jersey Bankruptcy Case was a Chapter 7 liquidation.  Counsel made diligent efforts to determine whether there was available documentary proof that Liel had or had not been given notice of that bankruptcy.  Upon inquiry, counsel learned from an archivist with the U.S. National Archives that the entirety of the bankruptcy file had been destroyed in 2018.  (*See* A71-75)

[6] Concurring, the third justice analyzed the issue differently but reached the same result.  He posited that the 1992 Discharge could be enforced if it were recognized as a discharge under Israeli bankruptcy law.  Under that law, a debtor discharged of his debts in an Israeli proceeding may "'claim that the cause of action occurred before the discharge.'"  (A62)  He noted, however, that this claim "is a defense plea" that the debtor must "raise in the action filed against the debtor-defendant and not," as Kozuch claimed, "in precluding the execution of the judgment."  *Id.*

the adversary proceeding Kozuch admitted its falsity in his sworn responses to contention

interrogatories.

> INTERROGATORY 5: Do you contend that you did not have or were not
> afforded a full and fair opportunity to defend the proceeding that resulted in the
> 1993 Judgment?
>
> RESPONSE TO INTERROGATORY 5: Defendant asserts that Defendant was
> not provided with an opportunity to defend himself fully from the 1993 Judgment.
>
> INTERROGATORY 6: If your response to interrogatory number 5 is in the
> affirmative, set forth the entirety of the basis for your contention.
>
> RESPONSE TO INTERROGATORY 6: Defendant asserts that Defendant was
> not provided with an opportunity to defend himself fully from the 1993 Judgment
> *because the attorney handling the matter in the Israeli Magistrate Court failed to
> introduce his chapter 7 discharge from the United States Bankruptcy Court for
> the District of New Jersey within five (5) years*. (Emphasis added.)

(A76-86)[7]

Notwithstanding that he failed to raise the 1992 Discharge before the Magistrate's Court,

Kozuch listed the debt to Liel in his present Chapter 13 case, characterizing it as a "disputed

Ancient Business Debt" that was both "contingent" and "unliquidated."  *In re Kozuch*, U.S.

Bankruptcy Court, Southern District of New York, 20-11252-cgm, Schedules E/F at 4.8.)  (Of

course, that is contrary to the position he now takes, that the debt was discharged in the New

Jersey Bankruptcy Case.  And, of course, Kozuch's characterization of the debt is flatly wrong—

the debt was no longer contingent after Liel obtained the 1993 Judgment and it was liquidated in

amount by the 1993 Judgment.)

---

[7] Noting that Liel denied having received notice of the New Jersey Bankruptcy Case, the Israel Supreme Court also expressed the view that there was an "obligation imposed on [Kozuch] to prove that [Liel] was given a reasonable opportunity to argue his case and to present his evidence before . . . [the order of discharge] was rendered by the foreign court."  (A55-64)

For his part, Liel denied receipt of *any* documents from the New Jersey Bankruptcy Case and denied ever having been given an opportunity to oppose the discharge granted to Kozuch in that proceeding.  (A68-70)  In an affidavit filed in connection with the Israeli litigation, Liel supported that denial, stating under oath, that "[h]ad I received documents in which the Debtor declares his debt to me, I clearly would have used them in the trial as a litigant's admission" of liability.

As noted above at the outset of this brief, Liel's adversary complaint in the underlying proceeding (A10-14) challenged Kozuch's right to a discharge from the debt he listed in his Chapter 7 petition in his bankruptcy case, relying on 11 U.S.C. § 523(a)(2)(A) (fraud exception to discharge) and the conclusive and final findings and conclusions underlying the 1993 Judgment.  By decision dated December 13, 2021, the bankruptcy court denied Liel's motion for summary judgment pursuant to Federal Rule of Bankruptcy Procedure 7056, granted summary judgment in favor of Kozuch (A202-212), and, by order dated December 20, 2021, and entered December 21, 2021, the court dismissed the adversary proceeding, (A198-99).  This appeal follows.

### The Decision and Order
### of the Bankruptcy Court

Although the bankruptcy court advanced several justifications for its dismissal of Liel's adversary complaint, one was central—that the 1992 Discharge was effective to discharge Kozuch's debt to Liel and that the subsequent 1993 Judgment was accordingly void.  (*See* A189-191)  This conclusion relied in turn on the bankruptcy court's determination that Kozuch had scheduled Liel as a known creditor in that bankruptcy, and that the address he had listed was in fact Liel's address in Ramat Gan, Israel.  (A191)

Because Federal Rule of Bankruptcy Procedure 2002(f) mandates that the court (through its clerk) serve notice of the proceeding (the "order for relief," or petition, as well as other papers) on scheduled creditors, the court relied on a *presumption* of receipt.  In other words, the court concluded that since the address on the schedule was correct and the clerk is required by Rule 2002(f) to serve pertinent papers on scheduled creditors, the clerk must have done so here, Liel must have received such papers, and this was sufficient to satisfy due process.  (A187-97)  Accordingly, based solely on two documents (the barely legible schedule of creditors (A67) and the barely legible 1992 Discharge itself (A66)), and a presumption of receipt, the court concluded "[t]his evidence is sufficient to demonstrate that the debt was discharged in the N.J. Bankruptcy Case."  (A191)  The court held that "proof of mailing is not necessary to determine the dischargeability of a debt under 11 U.S.C. § 523(a)(3)."  (A192)

According to the bankruptcy court, that the entirety of the file of the New Jersey Bankruptcy Case was destroyed by the U.S. Archives in 2018 (A71-75) (*see supra* at 6, n. 5), and therefore that proof of mailing was unavailable, only served to strengthen its conclusion. (This "is important to note because, in this case, the original court records have been destroyed.") (A192)  Accordingly, in the absence of any *proof* of mailing, the bankruptcy court nevertheless concluded that the order for relief and the 1992 Discharge *must* have been mailed because the Code and Rules require such mailing.  The court therefore held that the Code and Rules had been complied with and constitutional due process satisfied.  (A190-93)

To justify this conclusion, the court purported to rely on an Eastern District of New York bankruptcy court decision, *In re Heyward*, 15 B.R. 629 (Bankr. E.D.N.Y. 1981), from which it quoted what it believed was the applicable rule:

> [T]he timely listing of creditors and their claims is all that is required of the
> debtor.  If the court fails to send notice to the creditor or if, for some reason, the

creditor is not actually informed of the bankruptcy, the debt will be discharged nonetheless.[8]

The bankruptcy court reached two other determinations (although since it ruled the 1992 Discharge effective against Liel, it needed to go no further).  First, it declined to apply comity and issue preclusion (collateral estoppel) and recognize the 1993 Judgment as precluding discharge based on fraud because, it concluded, Liel had the burden under CPLR § 5302(c) (the New York Recognition of Foreign Country Money Judgments Act) to demonstrate that the judgment remained enforceable in Israel and had not done so.  (A195-96)  In reaching this determination, the court relied on Fed. R. Civ. P. Rule 44.1 (as made applicable by Federal Rule of Bankruptcy Procedure 9017), as placing the burden on Liel to satisfy this legal requirement under CPLR § 5302(c).  *Id*.  Second, it concluded that, under CPLR § 5303(d), the 1993 Judgment could no longer be enforced under New York law because it had been granted more than twenty years ago, precluding enforcement.  *Id*.

## Summary of Argument

The bankruptcy court's decision rests on a presumption that could not have arisen because the basic conditions required for such a presumption were lacking.  It is axiomatic that the party invoking a presumption must establish the basic facts giving rise to it.  Only then does the burden shift to the party opposing the presumption of establishing the nonexistence of the presumed fact.  In concluding that Liel had in fact received notice of the New Jersey Bankruptcy Case, the court "presumed" that he did so *not* because there was proof of mailing of notice— there was no such proof—but because the Federal Rules of Bankruptcy Procedure mandate

---

[8] See discussion of *Heyward*, *infra* at 20-21.

mailed notice by the court.  The Rules, however, do not constitute proof of mailing.  Without proof of mailing, the presumption of receipt cannot arise.

The bankruptcy court misapplied the Bankruptcy Code in concluding that, because Kozuch correctly scheduled his debt to Liel, Liel had been afforded all the process constitutionally due him.  It is certainly correct, as the court observed, that under Rule 2002(f) of the Bankruptcy Rules the clerk of the court (or such other person as the court designates) is required to serve key bankruptcy-related notices and papers.  And it is also certainly correct to point out, as the court did, that "'the timely listing of creditors and their claims is all that is required *of the debtor*'" (A192) (emphasis added), it does not follow from either of these observations that actual or constructive notice is not constitutionally required.  The Bankruptcy Code and procedural rules must defer to the requirement of due process, and where a creditor establishes that she or he did not have notice of a bankruptcy proceeding in time to permit a challenge to dischargeability, the Code and Rules must yield to the Constitution.

Moreover, as debtor, Kozuch had the burden to prove adequate notice and failed to do so—he was required to present actual evidence that such notice was given and did not.  But even if he had done so, and the burden of persuasion had shifted to Liel, the totality of the circumstances indicate that Liel did not have proper notice of the New Jersey Bankruptcy Case or of the 1992 Discharge.  First, Liel denied receipt of notice (A68-70), but there is much more to defeat the presumption.  Kozuch conclusively admitted in discovery that the 1992 Discharge was not presented to the Israeli court that issued the 1993 Judgment.  (A76-94)  Kozuch failed to invoke the automatic stay in the New Jersey Bankruptcy Case to halt the Israeli proceedings and delayed presenting the 1992 Discharge to the Israeli courts for almost six years.  (A56-64)  And, despite insisting that the 1992 Discharge was effective as against the 1993 Judgment, Kozuch

nonetheless listed the underlying debt as a liability in his current Chapter 13 bankruptcy (he did

not disclose in his Schedules E/F, however, that what he characterized as an "Ancient Business

Debt" had in fact been reduced to judgment, and was not, as he claimed, "disputed,"

"Unliquidated," and "Contingent).  *See In re Kozuch*, U.S. Bankruptcy Court, Southern District

of New York, 20-11252-cgm, Schedules E/F at 4.8.)  The totality of the circumstances indicates

that Liel never received notice of the New Jersey Bankruptcy Case, had no opportunity to

challenge discharge, was prejudiced by Kozuch's conduct, and that the resulting denial to him of

constitutional due process rendered the 1992 Discharge void as to the 1993 Judgment.

Under well settled principles of international comity and *res judicata* (collateral estoppel

or issue preclusion),[9] the bankruptcy court should have recognized or given effect to the

judgment and held that it barred Kozuch from the discharge he sought.  While the bankruptcy

court discussed but did not reach a definitive resolution of the issue, it is plain that those

principles mandate that the 1993 Judgment be given effect to preclude Kozuch's discharge and

that the bankruptcy court should have granted summary judgment in Liel's favor in the adversary

proceeding.

The bankruptcy court also misapplied CPLR § 5303(d) in finding that the 1993 Judgment

would  be unenforceable under New York law because it was entered more than twenty years

---

[9] The bankruptcy court refers to both *res judicata* and collateral estoppel in its decision.  The lines
between *res judicata* and collateral estoppel are somewhat blurry, and courts and litigants frequently use
these terms loosely or interchangeably.  In fact, *res judicata,* also known as claim preclusion, and
collateral estoppel, also known as issue preclusion, are distinct doctrines, as explained by the Supreme
Court in *Lawlor v. Nat'l Screen Serv. Corp,* 349 U.S. 322, 326, 75 S.Ct. 865, 99 L.Ed. 1122 (1955):
"[U]nder the doctrine of *res judicata*, a judgment on the merits in a prior suit involving the same parties
or their privies bars a second suit based on the same cause of action.  Under the doctrine of collateral
estoppel, on the other hand, such a judgment precludes relitigation of issues actually litigated and
determined in the prior suit, regardless of whether it was based on the same cause of action as the second
suit."  In this case, collateral estoppel, or issue preclusion, is the appropriate doctrine for analysis.

ago.  The twenty-year limitations period of CPLR § 5303(d) was inapplicable here because it was added to the CPLR by the 2021 amendments.  It was not part of the statute when Liel commenced the adversary proceeding (in 2020), and, because the automatic stay in effect from the filing of Kozuch's Chapter 13 proceeding prevented Liel from commencing an action for enforcement of the 1993 Judgment prior to the amendment that added that limitations period, 11 U.S.C. § 108 extends Liel's time for doing so until after the bankruptcy stay is dissolved.

Finally, the bankruptcy court, relying on CPLR § 5302(c), improperly sought to apply Israeli law and incorrectly placed the burden on Liel to prove that enforcement of the 1993 Judgment was still permitted under Israeli law, when he had no such burden because he had not brought an enforcement action under the statute and neither party had given notice of an intention to rely on foreign law.  The court therefore reached a determination contrary to Rule 44.1 of the Federal Rules of Civil Procedure.  Finally, the bankruptcy court erred in considering whether Liel would be permitted to bring an action for enforcement under the New York Recognition of Foreign Country Money Judgments Act because that question was not before the court—Liel sought *recognition* of the 1993 Judgment to prevent discharge of Kozuch's debt, not enforcement of the judgment, and the automatic stay of Code § 362 currently prevents him from doing so.  Only if this Court reverses would Liel even have the right to file an enforcement action, and the issue of current effectiveness and enforcement of the 1993 Judgment would be decided in that action.

*          *          *

# ARGUMENT

## POINT I

### THE 1992 DISCHARGE IS INEFFECTIVE
### AGAINST LIEL FOR LACK OF DUE PROCESS

Although we raise five distinct issues on appeal, two are dispositive.  They are (1)

whether the 1992 Discharge was effective to void the 1993 Judgment, and (2) whether the

bankruptcy court was required by settled principles of international comity and *res judicata*, in

this instance issue preclusion or collateral estoppel to recognize and give effect to the findings

and conclusions of the 1993 Judgment.  As to the first question, because Liel never was given

notice of the New Jersey Bankruptcy Case or of his right to object to Kozuch's discharge in that

proceeding, constitutional due process considerations render it ineffective against Liel.  The 1993

Judgment is therefore a valid and binding judgment.  As to the second, both comity and collateral

estoppel (or issue preclusion) required recognition of the 1993 Judgment and are conclusive to

show that Kozuch's debt to Liel is for money Kozuch obtained by false pretenses, false

representations, and actual fraud.

### A.  Notice is the Cornerstone of Due Process.

It is a bedrock principle of bankruptcy law that "[d]ischarge under the Bankruptcy Code

. . . presumes that all creditors bound by . . . [a] plan have been given notice sufficient to satisfy

due process."  *In re U.S.H. Corp. of N.Y.*, 223 B.R. 654, 658 (Bankr. S.D.N.Y. 1998) (Lifland,

B.J.) (citing *In re First Am. Health Care of Georgia*, 220 B.R. 720, 723 (Bankr. S.D. Ga.1998));

*In re Grumman Olson Indus.*, 467 B.R. 694, 706 (S.D.N.Y 2012) ("As courts have long

recognized, the requirement of '[n]otice is the cornerstone underpinning Bankruptcy Code

procedure.'") (quoting *Western Auto Supply Co. v. Savage Arms, Inc. (In re Savage Indus., Inc.)*,

43 F.3d 714, 720 (1st Cir. 1994)).  Due process is satisfied if notice is "reasonably calculated to

reach all interested parties, reasonably conveys all of the required information, and permits a reasonable amount of time for response." *In re U.S.H. Corp.,* 223 B.R. at 658 (citing *Mullane v. Central Hanover Bank*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950); *First Am. Health Care of Ga.,* 220 B.R. 720, 724 (Bankr. S.D. Ga. 1998).  The bankruptcy court here ignored these fundamental precepts.  *See DPWN Holdings (USA), Inc. v. United Air Lines, Inc.,* 871 F.Supp.2d 143, 153 (E.D.N.Y. 2012) ("Any determination of whether a claim has been discharged 'cannot be divorced from fundamental principles of due process.'") (quoting *In re Grossman's,* 607 F.3d 114, 125 (3d Cir. 2010)).

The burden of establishing that a creditor has received adequate notice rests squarely with the debtor.  *In re Massa*, 187 F.3d 292, 296 (2d Cir. 1999) (citing *Dependable Ins. Co. v. Horton (In re Horton)*, 149 B.R. 49, 57 (Bankr. S.D.N.Y. 1992)); *In re Lerner,* 515 B.R. 26, 32 (Bankr. E.D.N.Y. 2014) ("The burden of proof rests with the debtor to show that the creditor had notice or actual knowledge of the case.").  It is axiomatic that "if a creditor is not given reasonable notice of the bankruptcy proceeding and the relevant bar dates, its claim cannot be constitutionally discharged." *In re U.S.H. Corp.,* 223 B.R. at 658 (citing *In re Longardner and Assocs., Inc.*, 855 F.2d 455, 465 (7th Cir. 1988)).[10]

What constitutes "reasonable notice" varies according to the knowledge of the parties. "[I]f a creditor is known to the debtor, . . . actual notice of the relevant bar dates must be afforded to the creditor."  *In re U.S.H. Corp.,* 223 B.R. at 658 (citing *City of New York v. New York N.H. & H.R. Co.*, 344 U.S. 293, 296, 73 S.Ct. 299 (1953)).  Liel had been engaged in active litigation with Kozuch since April 12, 1990, the commencement date of the Magistrate's Court action.

---

[10] Lacking any actual proof of mailing of bankruptcy notices—proof that typically would have been the clerk's certificate of mailing—strict observance of the rule that the burden of demonstrating notice rests with the debtor is all the more important.

(A12, 27)  Kozuch filed his petition in the New Jersey Bankruptcy Case on July 6, 1991 (A221

n. 7) (*see In re Kozuch*, U.S. Bankruptcy Court, District of New Jersey, Docket 91-26045, cover

sheets))  and was granted the 1992 Discharge on January 6, 1992.  (A65-66)  Liel was plainly a

"known" creditor but did not receive actual notice of Kozuch's bankruptcy filing.  Accordingly,

his claim against Kozuch may not be discharged in Kozuch's present bankruptcy proceeding.

*See In re Maya Construction*, 78 F.3d 1395, 1399 (9th Cir. 1996), *cert. denied*, 519 U.S. 862,

117 S.Ct. 168 (1996) ("Generally, if a known creditor is not given formal notice, he is not bound

by an order discharging the bankruptcy's [sic] obligations.").  In these circumstances, due

process sufficient to satisfy constitutional standards was not afforded Liel.

### B.   The Bankruptcy Court Improperly Relied on a Presumption of Receipt of Allegedly Mailed Documents without Proof of Mailing.

The bankruptcy court relied on Federal Rule of Bankruptcy Procedure 2002, which

provides that "the clerk [of the court], or some other person as the court may direct," gives notice

of various bankruptcy-related events and proceeding.  Most importantly under Rule 2002(f), the

clerk is directed to

> give notice by mail of: (1) the order for relief; (2) the dismissal or the conversion of the
> case to another chapter or the suspension of proceedings under § 305; (3) the time
> allowed for filing claims pursuant to Rule 3002; . . . [and] (5) the time fixed for filing a
> complaint to determine the dischargeability of a debt pursuant to § 523 of the Code as
> provided in Rule 4007. . . .[11]

---

[11]  Rule 4004(g) also requires the "clerk" to give notice of a final order of discharge by mailing it to,
among others, creditors.  Of course, there is no evidence of such mailing in this case.

Federal Rule of Bankruptcy Procedure 2002(f).  But while the rules *require* "notice by mail," that does not mean that "notice by mail" was in fact given.[12]

The bankruptcy court's decision rests on a presumption that could not have arisen because the conditions required for such a presumption were lacking.  It is axiomatic that the party invoking a presumption must establish the basic facts giving rise to it.  *See* Fed. R. Evid. 301; *see also Union Pacific R. Co., Inc. v. U.S.,* 524 F.2d 1343 (Cl. Ct. 1975) ("Presumptions are not evidence, and they disappear in the face of substantive evidence tending to disprove them."); *Mast v. Ill. Centr. R. Co.,* 79 F.Supp. 149, 168 (N.D. Iowa 1949) ("It is a general rule of law that presumptions do not create their own foundations.")  Only when this basic threshold has been met does the burden shift to the party opposing the presumption of establishing the nonexistence of the presumed fact.  In concluding that Liel had in fact received notice of the New Jersey Bankruptcy Case, the court "presumed" that he did so *not* because there was proof of mailing of notice—there was no such proof—but because the Bankruptcy Rules mandate mailing by the court.  The rules of procedure in and of themselves, however, do not constitute proof of mailing.  And, without proof of mailing, the presumption of receipt cannot arise.  *In re Borders Group, Inc.,* 462 B.R. 48, 52 (Bankr. S.D.N.Y. 2011) (finding that a debtor must produce evidence of actual mailing in order to benefit from presumption of receipt under the "mailbox rule").

"A rebuttable presumption that an addressee received a mailed notice arises when the mailing party submits sufficient evidence to demonstrate the notice was properly addressed *and mailed*." *In re Borders Group, Inc.,* 462 B.R. at 52 (quoting *In re Worldcom, Inc*., Case No. 02–13533, 2005 WL 3875192, at *3 (Bankr. S.D.N.Y. Oct. 27, 2005) (Gonzalez, J.) (finding that a

---

[12]  In the normal course, no issue as to mailing would arise as the clerk files a certificate attesting to mailing.  *See*, *e.g*., *In re Bucknum*, 951 F.2d 204, 206–07 (9th Cir. 1991) (discussing clerk's certificate of mailing and presumption arising therefrom).

claimant received notice of a bar date based on evidence demonstrating that notice was properly addressed *and mailed*) (emphasis added)); *see also Hagner v. U.S.*, 285 U.S. 427, 430, 52 S.Ct. 417, 76 L.Ed. 861 (1932) ("The rule is well settled that proof that a letter properly directed was *placed in a post office* creates a presumption that it reached its destination in usual time and was actually received by the person to whom it was addressed.") (emphasis added)).

The sender must provide evidence of actual mailing in the form of an affidavit submitted by an individual who supervised the mailing to allow the presumption to arise. *See In re Worldcom, Inc.*, 2005 WL 3875192, at *3 (citing *In re Adler, Coleman Clearing Corp.*, 204 B.R. 99, 104–05 (Bankr. S.D.N.Y. 1997) (finding that affidavit submitted by president of company stating that he oversaw mailing of claims packages was sufficient to trigger the presumption of receipt)).

Kozuch, as debtor and as noted above, had the burden in the adversary proceeding below to present actual evidence that such notice was given. He failed to do so. *See In re Lerner,* 515 B.R. at 32. In such a situation, courts in the Second Circuit look to the "totality of the circumstances" in determining whether a creditor was afforded adequate notice or had actual knowledge of the proceeding. *Id.* (quoting *In re Massa,* 187 F.3d at 297). Even if the burden of persuasion had shifted to Liel, consideration of the "totality of the circumstances" strongly supports Liel's contention that he did not have timely notice of the New Jersey Bankruptcy Case (or of the 1992 Discharge.)[13]

---

[13] As noted above, (*supra* at 11-12), and at the risk of repetition, those circumstances were that Liel denied receipt of notice (A68-70); that Kozuch conclusively admitted in discovery in the adversary proceeding that the 1992 Discharge was not presented to the Magistrate's Court that issued the 1993 Judgment; that neither Kozuch nor his counsel invoked the automatic stay to halt the Israeli proceedings; that Kozuch delayed presenting the 1992 Discharge to *any* Israeli court for almost six years while he and Liel were in active litigation; and, despite Kozuch's insistence that the 1992 Discharge was effective to
*(Continued on Next Page)*

And, as we have also pointed out (*supra* at 11-12), Liel was seriously prejudiced by Kozuch's failure to assure that Liel had notice of the bankruptcy in time to permit a challenge under § 523(a)(2)(A).  On January 6, 1991 (A221 n. 7) (*see In re Kozuch*, U.S. Bankruptcy Court, District of New Jersey, Docket 91-26045, cover sheets)), when Kozuch filed the New Jersey Bankruptcy Case, he and Liel had been in litigation for *fifteen* months (the Magistrate's Court action was commenced April 12, 1990).  Both Liel and Kozuch were represented by counsel, who presumably communicated—there would be little reason Kozuch's counsel did not advise Liel's counsel of the New Jersey Bankruptcy Case.  (For one thing, the filing of that case and the effect of the automatic stay under § 362 would have stopped the Israeli proceedings in its tracks.)

The Magistrate's Court action was well underway, (the first day of trial took place on November 26, 1992 (A20)), and was adjourned to allow Kozuch to travel to Israel from the United States to testify (which he ultimately failed to do).  During the period from the filing of the Magistrate's Court action to Kozuch's untimely disclosure of the 1992 Discharge to the Execution Office of the District Court (almost six years), Liel had expended time (some seven or eight years) in litigation with Kozuch, money (while the Court may take judicial notice that legal fees in Israel litigation are generally less than they are in the United States, the amount would nonetheless have been significant), and other resources.  Moreover, Kozuch's failure to assure that Liel had notice of his bankruptcy imposed an undue burden on the courts of Israel, from the Magistrate's Court, to the District Court, to the Supreme Court of Israel (twice.)  Had Kozuch

---

void the 1993 Judgment he nonetheless listed the underlying debt as a liability in his current Chapter 13 bankruptcy.

and his counsel (Israeli or American) taken the simple step to verify that Liel had received notice of the New Jersey Bankruptcy Case, that burden might have been avoided.

In short, the "totality of the circumstances" show that Liel never received notice of the New Jersey Bankruptcy Case, that he was never afforded the opportunity to make his case under 11 U.S.C. § 523(a)(2)(A), that he sustained substantial prejudice, and that denial to him of the process that was due him rendered the 1992 Discharge void as to him and as to the 1993 Judgment.[14]

### C. The Authorities Cited by the Bankruptcy Court Do Not Support the Conclusion that Liel was Afforded Notice and Due Process.

The bankruptcy court ruled that "the timely listing of creditors and their claims is all that is required of the debtor." (A192) But *In re Heyward*, 15 B.R. 629, 632 (Bankr. E.D.N.Y. 1981), from which this enunciation of a rule of law is purportedly quoted, does not say that.[15] In

---

[14] While it is understandable that the bankruptcy court would assume that the clerk's office of the New Jersey Bankruptcy Court correctly did its job, this is after all nothing more than an assumption. And while we acknowledge that the presumption of receipt from mailing may be created by "proof of a standard office practice or procedure designed to insure that items are properly addressed and mailed," *D.M. Rothman & Co., Inc. v. Korea Commercial Bank of New York*, 411 F.3d 90, 98 (2d Cir. 2005), still this requires *evidence*. Moreover, "if a party seeks to prove that a mailing took place by offering evidence that the standard office practice is trustworthy, that "office practice must be geared so as to insure the likelihood that a [letter] is always properly addressed and mailed." *Owusu v. New York State Ins.*, 655 F.Supp. 2d 308, 321 (S.D.N.Y. 2009) (citing and quoting *Nassau Ins. Co. v. Murray*, 46 N.Y.2d 828, 829, 414 N.Y.S.2d 117, 117, 386 N.E.2d 1085 (1978)). *See also Badio v. Liberty Mut. Fire Ins. Co.*, 12 A.D.3d 229, 229, 785 N.Y.S.2d 52, 52 (1st Dep't 2004). Evidence that the New Jersey Bankruptcy Court had and followed such a procedure in 1991 and 1992 might have created a presumption of mailing, but the record here is devoid of any such evidence.

[15] In fact, the quotation is not from a court at all, but from a bankruptcy treatise:

> It should be pointed out that the timely listing or scheduling of the debt is all that is required of the debtor. If the court fails to send notice to the creditor or if, for some reason, the creditor is not actually informed of the bankruptcy, the debt will be discharged nonetheless.

*(Continued on Next Page)*

*Heyward*, the New York City Department of Social Services sought an extension of time in which to file an objection to the dischargeability of a debt.  The debtor correctly listed the Department as one of her creditors and supplied a correct address.  The court signed an order fixing the times for filing objections to discharge and for filing complaints objecting to discharge.  Pursuant to that order, the clerk of the court "executed a certificate of mailing in which she certified that, on April 3, 1981, she personally deposited in the United States Mail notices of . . . the [above] filing deadlines."

The court denied the extension, stating "[i]t is well recognized that a proper mailing raises a rebuttable presumption that the article mailed was received by the addressee."  *Id*. at 632 (citing *Hagner*, 285 U.S. at 430).  The court concluded that "[b]ased on the Bankruptcy Clerk's Office documentation certifying the mailing of the notice to the Department and on the presumption of delivery and receipt, this court is entitled to presume that the Department received notice of . . . filing deadlines."  *Id*. at 632-33.  In the last analysis, since *Heyward* relied on clear proof of mailing of the relevant notice, the case is wholly inapposite to the case before this Court.

Nor do the other cases on which the bankruptcy court relied lend support to its conclusions.  For example, the court cited *D'Agostino v. Walker (In re Walker)*, 125 B.R. 177, 180 (Bankr. E.D. Mich. 1990), for the proposition that "a creditor has been duly scheduled and listed if the address provided by the debtor is sufficiently accurate to permit delivery by the

---

The source of the quotation is a treatise titled Weintraub and Resnick, BANKRUPTCY LAW MANUAL, that we were unable to locate on Westlaw.  A Google search disclosed that the book was published in 1980 and last updated in 1992, and that, although information about the book is available through Google, the book itself does not appear to be available from any ready source.  Not surprisingly, the bankruptcy court did not cite any other authority for this remarkable proposition.  It is contrary to the settled body of due process precepts and if accepted would make a mockery of those precepts.

United States Postal Service to the appropriate party."  While indisputably a correct proposition, unless there is proof that a notice addressed to a creditor at a "sufficiently accurate" address was in fact mailed, it is irrelevant.   There was no such proof here.

The court also relied on *In re Massa*, 187 F.3d 292.  (A191-92)  In that case, the debtor sought to hold creditors in contempt for violating an injunction pursuant to a discharge.  The debtor contended that letters sent by his counsel to attorneys representing creditors were sufficient to provide notice of his bankruptcy and therefore that continuing state court litigation against debtor challenging dischargeability of a debt was a violation of the injunction.  The Second Circuit's holding was limited to assessing whether the letters were sufficient to provide adequate notice of the debtor's bankruptcy.  Noting that the letters failed to give notice of the conversion of the debtor's original Chapter 13 proceeding into, ultimately, a Chapter 7 proceeding, and failed to specify the venue of the bankruptcy proceeding, the court held they were not sufficient.  *In re Massa,* 187 F.3d at 297.  The court stressed that the burden to prove notice was on the debtor.  *Id*. at 296.  It observed that the courts look "to the totality of the circumstances in" in determining whether a creditor was adequately apprised of the proceeding. *Id*. at 297.  The case does not support the conclusion that Liel was afforded proper and timely notice.  As discussed above, (*supra* at 11-12, 18-20), the totality of the circumstances here are virtually conclusive of the issue whether Liel received proper and timely notice of the New Jersey Bankruptcy Proceeding notice or had actual knowledge of Kozuch's filing in the New Jersey Bankruptcy Case.  He did not.

## POINT II

## PRINCIPLES OF INTERNATIONAL COMITY AND COLLATERAL ESTOPPEL BAR KOZUCH FROM RELITIGATING THE ISSUE OF FRAUD

### A.  Principles of International Comity Compel Recognition of the 1993 Judgment.

The 1993 Judgment against Kozuch was not automatically binding on the bankruptcy court as a judgment of a court of a sister state would be under the Full Faith and Credit Clause of the U.S. Constitution.  Nor is there a recognition treaty between the United States and Israel that would automatically render the Israeli judgment effective in the United States.  Yet principles of international comity compel the conclusion that the judgment should be given effect here.[16]

The seminal case is the venerable decision of the Supreme Court in *Hilton v. Guyot*, 159 U.S. 113, 16 S.Ct. 139 (1895).  There, the Court declared that:

> where there has been opportunity for a full and fair trial abroad before a court of competent jurisdiction, conducting the trial upon regular proceedings, after due citation or voluntary appearance of the defendant, and under a system of jurisprudence likely to secure an impartial administration of justice between the citizens of its own country and those of other countries, and there is nothing to show either prejudice in the court, or in the system of laws under which it was sitting, or fraud in procuring the judgment, or any other special reason why the comity of this nation should not allow it full effect, the merits of the case should not, in an action brought in this country upon the judgment, be tried afresh, as on a new trial or an appeal, upon the mere assertion of the party that the judgment was erroneous in law or in fact.

*Id*. at 202-03; 16 S.Ct. at 158.  *See also In re Aktiebolaget Kreuger & Toll*, 20 F.Supp. 964, 969 (S.D.N.Y. 1937).

These principles are routinely and uniformly applied; nothing in the Bankruptcy Code precludes their application here.  In *Fairchild, Arabatzis, & Smith, Inc. v. Prometco*, 470 F.Supp.

---

[16]  Of course, unless this Court accepts Liel's contentions concerning lack of constitutional due process, the following argument is irrelevant.

610, 615 (S.D.N.Y. 1979), for example, the court summarized these principles as follows:

> A foreign judgment when sued upon in New York normally precludes a retrial upon the merits unless the judgment is tainted with fraud or with an offense against public policy or the foreign court had not jurisdiction over the person of the defendant or of the subject matter of the action.

The *Fairchild* court first addressed comity, ruling that a British judgment had preclusive effect where the prior action was decisive of the subsequent action.  It also noted that the party seeking to avoid the estoppel effect of comity did not have a full and fair opportunity to litigate the issue in the prior action.

In *Trikona Advisers Limited v. Chugh*, 846 F.3d 22 (2d Cir. 2017), plaintiff Trikona appealed from a decision of the district court granting summary judgment in favor of defendants based on a final judgment of a Cayman Islands court.  The Cayman judgment directed that Trikona, a Cayman corporation, would be wound up based upon a finding that it was "just and equitable" to do so.  *Id.* at 27.  To reach that conclusion, the Cayman court necessarily determined that the defenses to dissolution, principally that one of Trikona's co-owners had breached his fiduciary duty to Trikona, were without merit.  *Id.* at 28.  Nonetheless, in an action in the District of Connecticut, another co-owner sued for breach of fiduciary duty on the part of the co-owner who was the instigator of the Cayman dissolution action.  Trikona argued on appeal, among other things, that the district court had incorrectly applied the doctrine of international comity, and that "Chapter 15 of the United States Bankruptcy Code prevent[ed] the district court from giving preclusive effect to the Cayman court's factual findings."  *Id*. at 26.  The circuit court rejected these contentions and affirmed the judgment.  *Id*. at 30-32.

As to comity, the Second Circuit observed that "[j]udgments of courts of foreign countries are recognized in the United States because of the comity due to the courts and judgments of one nation from another."  *Id*. at 34 (internal quotations and citation omitted).

There is a "strong presumption in favor of granting comity to foreign judgments." *Id*. at 35.  The

Second Circuit affirmed the district court's holding that Title 11 of the United States Code did

not prevent the use of either collateral estoppel or comity. *Id.*

Finally, in *Tahan v. Hodgson*, 662 F.2d 862 (D.C. Cir. 1981), the United States Court of

Appeals for the D.C. Circuit, reversing the district court, approved enforcement in America of an

Israeli default judgment.  The court noted that "it was not alleged that the Israeli court lacked

competent jurisdiction, nor is the general integrity of the Israeli court system questioned, nor is it

alleged that the judgment rendered in this case was fraudulent." *Id.* at 864.  The court therefore

posed the following three questions:  First, "was there 'due citation' of defendant," *i.e.* "effective

service of process?" *Id.*  Second, would enforcement of the judgment be "repugnant to

fundamental notions of what is decent and just in the State where enforcement is sought." *Id*.

(Citing Restatement (Second) Conflict of Laws).  *Id.*  And, third, "[w]hat applicability does the

doctrine of reciprocity have to this case?" *Id.*

The circuit court affirmed, finding that there had been effective service of process, that

enforcing the judgment did not violate public policy even though there were inconsistencies

between Israeli and U.S. federal procedure, and, finally, that it was unlikely that reciprocity

remained a federally mandated requirement for the enforcement of foreign judgments.  *Id.* at

865-68.  As to the latter point, the court held that even if reciprocity were still a required element

of international comity, it would still enforce the foreign judgment because in all probability

Israel would enforce a similar American judgment.  *Id*.  It concluded:

> As commerce becomes increasingly international in character, it is essential that
> businessmen recognize and respect the laws of those foreign nations in which they
> do business.  They cannot expect foreign tribunals to have one set of laws for their
> own citizens and another, more favorable, set for the citizens of other
> countries.  It is also essential that American courts recognize and respect the
> judgments entered by foreign courts to the greatest extent consistent with our own

ideals of justice and fair play.  Unfettered trade, good will among nations, and a vigorous and stable international-and-national-economy demand no less.

*Id*. at 868.

In short, under well-established principles of international comity, Kozuch is precluded from relitigating the issue of fraud, the 1993 Judgment should be given full effect here, and, given such effect, the discharge sought by Kozuch should be denied.

## B.  Issue Preclusion (or Collateral Estoppel) Principles Bar Kozuch from Relitigating the Issue of Fraud.

The same result will be reached under the doctrine of collateral estoppel.  The elements of collateral estoppel or issue preclusion are well settled.  "Collateral estoppel applies when (1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits."  *Purdy v. Zeldes,* 337 F.3d 253, 258 (2d Cir. 2003) (citing *Interoceania Corp. v. Sound Pilots, Inc.,* 107 F.3d 86, 91 (2d Cir. 1997)).   *See also In re Red Dot Scenic, Inc.,* 313 B.R. 181, 186 (Bankr. S.D.N.Y. 2004).

The relevant issue that was at stake in the Israeli Magistrate's Court action is identical to the issue at stake in this adversary proceeding.  The "issue at stake" in the Israeli proceeding was whether Kozuch committed a "fraud and deceit" against Liel—that is, whether, according to the account given by that court, Kozuch "intended to deceive Liel and betray Liel's trust," and whether, at the time Kozuch promised to remit the proceeds from the sale of diamonds to Liel, Kozuch "knew  . . . he would not be able to" perform that promise.  The issue in this adversary proceeding is whether the debt to Liel that Kozuch seeks to discharge is one for money obtained

by false pretenses, false representations, or actual fraud.  There is no daylight between these.  While formulated slightly differently, they are for all intents and purposes identical.

In *Trikona*, 846 F.3d 22, discussed *supra* at 24-25, the Second Circuit also rejected plaintiff Trikona's contention that the district court had "misapplied" the doctrine of collateral estoppel.  In rejecting that contention and affirming, the court of appeals found that the district court had correctly evaluated the issue of whether the Cayman judgment had "necessarily determined" the breach of fiduciary duty defense.  *Id.* at 32.  The court noted that if any of the assertions of breach of fiduciary duty had merit, the Cayman court would have been required to dismiss the petition for winding up.  *Id.*  This meant that the issue was "necessarily resolved." *Id.*

With respect to the second and third elements of collateral estoppel, it is plain that the issue was actually litigated in the Israeli proceeding and that Kozuch had a full and fair opportunity to litigate it.  That court possessed subject matter jurisdiction, it possessed personal jurisdiction over Kozuch, Kozuch appeared in that proceeding in response to proper service and actively defended it, he participated in the trial (through counsel; he declined to testify), and he defended post-judgment enforcement proceedings.  Because the court's holding as to fraud was at the heart of its decision, and was justified by fact and law, the judgment standing alone demonstrates that the issue was "actually litigated."  And, moreover, the judgment became final after Kozuch had prosecuted (and lost) an appeal.

Finally, with respect to the fourth element of collateral estoppel, there can be no doubt that the adjudication of the issue of Kozuch's fraud in the prior litigation in Israel was critical and necessary to support the judgment in that action.  Collateral estoppel and issue preclusion therefore prevents Kozuch from relitigating these matters decided adversely to him almost 29

years ago.

**C.     The Adjudication of Fraud Prevents Discharge under Section 523(a)(2)(A) of the Bankruptcy Code.**

The third issue here then is whether Section 523(a)(2)(A) of the Bankruptcy Code prevents Kozuch from obtaining a discharge.[17]   The cases arising under Section 523(a)(2)(A) are legion.  We need cite only a few.  The "elements of a claim of nondischargeability for fraud or false representations are that debtor made false representations, that debtors knew representations were false when made, that representations were made with intent to defraud creditor, that creditor reasonably relied on representations, and the creditor incurred resulting damage."  *In re Druckemiller*, 177 B.R. 859, 860-61 (Bankr. N.D. Ohio 1994).

> For a nondischargeability cause of action asserting actual fraud, the first, "false representation" element may be satisfied by proof of any deceit, artifice, trick, or design involving direct and active operation of the mind, used to circumvent and cheat another, that is, something said, done, or omitted with the design of perpetrating what is known to be a cheat or deception.

*In re Hampton*, 550 B.R. 773, 792 (Bankr. E.D. Ark. 2016).  "False pretense" within the meaning of provision in Bankruptcy Code [11 U.S.C. § 523(a)(2)(A)] authorizing denial of discharge of debt obtained by false pretenses generally denotes misrepresentation implied from purposeful conduct creating false impression.  *Matter of Garthe*, 58 B.R. 62, 64 (Bankr. M.D. Fla.1986).

With respect to these contentions, the Magistrate's Court made an explicit finding that

---

[17] Section 523(a)(2)(A) provides that "[a] discharge under section 727, 1141, 1191, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—. . . (2) for money . . . to the extent obtained by—(A) false pretenses, a false representation, or actual fraud . . . . 11 U.S.C.A. § 523(a)(2)(A) (West).

"[a]n act of deception and fraud was perpetrated against [Liel]" by Kozuch.  (A25)  The Magistrate's Court further found that Kozuch had lied to Liel and misrepresented his intentions when he promised Liel that he would keep "sales proceeds [from the sale of Liel's diamonds] separate from [Kozuch's] other business activities." (A18)

The findings of the Magistrate's Court compel denial of a discharge of Kozuch's indebtedness to Liel.

**POINT III**

**THE COURT PLAINLY ERRED IN APPLYING CPLR §§ 5303(d)
AND 5303(c) TO BAR ENFORCEMENT OF THE 1993 JUDGMENT**

**A.  11 U.S.C. § 108 Tolls The Limitations Period of the 2021 Amendment to CPLR § 5303(d).**

Yet another reason, in the view of the bankruptcy court, to reject Liel's challenge to Kozuch's right to a discharge rests upon CPLR § 5303(d), a provision of the New York Recognition of Foreign Country Money Judgments Act.  Under that section, which codifies the principles of international comity, the bankruptcy court held that the 1993 Judgment cannot be enforced in New York because, the court noted, CPLR § 5303(d) provides, "[a]n action to recognize a foreign country judgment must be commenced within the earlier of the time during which the foreign country judgment is effective in the foreign country or twenty years from the date that the foreign country judgment became effective in the foreign country." (A224)  The bankruptcy court was mistaken that this statute bars enforcement of the 1993 Judgment.

The above quotation of CPLR § 5303(d) is accurate as of the present (and was accurate as of the time the bankruptcy court wrote).  But prior to June 11, 2021, the statute was silent on the question of any limitation of time to bring an enforcement action on a foreign judgment.  Effective that day, the New York State Legislature amended CPLR § 5303(d) to provide for the

twenty-year limitations period.  The statute is not retroactive.  It applies prospectively only to actions commenced after its effective date, which was June 11, 2021.  *See* N.Y. C.P.L.R. 5303(d) (McKinney) (Amended L.2021, c. 127, § 4, eff. June 11, 2021.)

Kozuch filed his Chapter 13 proceeding on May 22, 2020.  (*See* Docket in *In re Kozuch*, U.S. Bankruptcy Court, Southern District of New York, 20-11252-cgm, Docket Entry 1.)  That filing triggered the automatic stay (11 U.S.C. § 362) under the Bankruptcy Code, and from that moment federal law prohibited Liel from seeking recognition or enforcement of the 1993 Judgment in any context other than an adversary proceeding, as authorized by the Bankruptcy Code.  From May 22, 2020, then, Liel could not have commenced an enforcement action in a New York court under CPLR § 5303 without violating the stay.  Before May 22, 2020, on the other hand, Liel was free to commence an action for recognition of the judgment under CPLR § 5303.  But assuming that Liel prevails on this appeal, since the new provision is in effect, is there any way he could still bring the recognition action in New York?  The Bankruptcy Code provides the answer, and the answer is yes.

11 U.S.C. § 108 states:

(c) Except as provided in section 524 of this title, if applicable nonbankruptcy law . . . fixes a period for commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor . . . and such period has not expired before the date of the filing of the petition, then such period does not expire until the later of—

(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or

(2) 30 days after notice of the termination or expiration of the stay under section 362 . . . of this title . . . with respect to such claim.

Application of this statute yields the following conclusion.  Because there was no New York State limitations period on recognition of foreign judgments in effect at the time the

automatic stay came into effect (the petition date was a full year before CPLR § 5303(d) was

effective), and because the stay prevented Liel from commencing an action under Article 53 of

the CPLR after May 22, 2020, should Liel prevail here 11 U.S.C. § 108 provides that he will

have 30 days after the stay is dissolved to bring such an action.

**B.  The Bankruptcy Court Erred in Holding that CPLR § 5302(c) and Federal Rule of Civil Procedure 44.1 Placed the Burden on Liel to Prove that the 1993 Judgment Remained Enforceable under Israeli Law.**

Having already found (erroneously) that the Israeli judgment was not enforceable in New

York under CPLR § 5303(d) because it was more than twenty years old (A195), the court

proceeded to the question of whether the 1993 Judgment remained enforceable in Israel, (A195-

96).[18]  The court reasoned that it could recognize the judgment only if it remained enforceable in

Israel and, further, that Liel bore the burden of demonstrating such enforceability. *Id.*  In

reaching this conclusion, the court relied upon CPLR § 5302(c), which states that "[a] party

seeking recognition of a foreign country judgment has the burden of establishing that [the New

York Foreign Money Judgments Act] applies to the foreign country judgment," and upon Federal

Rule of Civil Procedure 44.1, which provides, in part, that "[a] party who intends to raise an

issue about a foreign country's law must give notice by a pleading or other writing."  Reading

these two provisions together, the bankruptcy court concluded that, in order to prevent the

discharge of Kozuch's debt to Liel, Liel was required to establish the continued enforceability of

the Israeli judgment under Israeli law. (195-96)

---

[18]  The court's first conclusion should have ended its analysis.  Given the court's finding with respect to the 1993 Judgment, it was irrelevant whether Israeli law would still permit enforcement, as CPLR 5302(c) requires.

Implicitly acknowledging this, the bankruptcy court observed that Rule 44.1 permits courts to conduct their own independent research to determine foreign law.[19]  (A196) Nonetheless, the bankruptcy court went on to note that, while it was permitted to conduct its own inquiry as to enforceability of the Israeli judgment under Israeli law, it had no obligation to do so.  (A196) Rather, according to the bankruptcy court, Liel bore the burden of both raising the issue of the enforceability of the Israeli judgment under Israeli law and proving that it was, in fact, so enforceable.  *Id.*  The bankruptcy court concluded, flatly, that Liel "failed to meet his burden of demonstrating that the judgment is enforceable as a matter of law."[20]  *Id.*

The court's application of both CPLR § 5302(c) and Rule 44.1 was both improper and unnecessary.  First, neither Liel nor Kozuch raised an issue of continuing enforceability of the 1993 Judgment under Israeli law.  Second, a determination of Israeli law on the issue of enforceability was not required to adjudicate the issues presented on the motion before the court. Simply put, this was not an enforcement action.  The adversary proceeding concerned the dischargeability of Kozuch's debt to Liel, not the enforceability of the underlying judgment. Had the bankruptcy court ruled in favor of Liel and found that the debt in question was not dischargeable, then Liel would have subsequently filed a separate action in New York state to

---

[19] In a footnote, the court stated that it had "attempted to determine the enforcement period of domestic judgments in Israel but ha[d] been unable to find law on the point."  (A196 n.11) Nonetheless, the bankruptcy court observed that "Israeli law sets forth a five-year statute of limitations for bringing an application to have a foreign judgment recognized" and concluded on that basis that "the twenty-year period provided for under New York law is consistent with Israeli law."  *Id.*  Respectfully, Israeli law on the recognition of foreign judgments is wholly irrelevant to either New York law on the recognition of the judgment at issue in this case or its enforceability under either New York or Israeli law.

[20] In reaching this conclusion, the bankruptcy court seems to have overlooked the fact that Liel has *already* commenced and is currently pursuing an action to enforce the Israeli judgment in the Israeli courts.

enforce it.  Questions regarding the enforceability of the Israeli judgment were not properly before the bankruptcy court.[21]

Even if those questions had been within the bankruptcy court's purview, it was improper for the bankruptcy court to place upon Liel the burden of proving the enforceability of the Israeli judgment under Israeli law where neither Liel nor Kozuch had raised that issue.  Specifically, neither had argued or even implied that the relief sought in the adversary proceeding was in any way dependent upon an interpretation of Israeli law.  While Rule 44.1 does not specifically require the court to give notice to the parties "of its intention to raise and determine independently an issue not raised by them," and while Rule 44.1 does not "impos[e] an obligation on [] court[s] to take 'judicial notice' of foreign law," the rule nonetheless contemplates the court's arrival at a "sound result [that is] achieved with fairness to the parties." *See* Fed. R. Civ. P. 44.1 advisory committee's note.

To that end, "the rule provides flexible procedures for presenting and utilizing material on issues of foreign law."  *Id.*  For instance, where a court finds a relevant issue of foreign law that has not been briefed sufficiently, or at all, by the parties, the court "is free to insist on a complete presentation [of the foreign law] by counsel," *see id.*, for instance by directing the parties to fully brief the issue, *see, e.g., In re Lyondell Chem. Co.,* 543 B.R. 428, 443 (Bankr.

---

[21] The United States Court of Appeals for the Second Circuit has spoken to this very point, holding that challenges to the validity of foreign judgments under Article 53 "can occur only after a bona fide judgment-creditor seeks enforcement . . . . "  There is no legal basis under the statute for a pre-emptive attempt by a judgment-debtor to have a New York court declare that a foreign judgment is void, and enjoin its enforcement.  *Chevron Corp. v. Naranjo*, 667 F.3d 232, 241 (2d Cir. 2012).  In the present case, of course, Liel cannot claim to be a bona fide judgment-creditor until the 1993 Judgment is recognized in this country.

S.D.N.Y. 2016) ("When determining the contours of foreign law, if a court recognizes its own ignorance of foreign law, it has the authority to direct the parties to brief the question."). [22]

Here, the bankruptcy court identified an issue of foreign law—an issue that the bankruptcy court raised *sua sponte*, which had not been raised by either party— that it deemed relevant to the adjudication of Liel's summary judgment motion.  Under Rule 44.1, the bankruptcy court had the option of employing "flexible procedures" to determine that issue of foreign law, including requesting briefing of the issue from the party.  Instead, without making any such request or direction, the bankruptcy court imposed on Liel the burden of proving an issue of foreign law he had not raised and used his failure to meet this putative burden as yet another justification for denying his motion.  Such a result is counter to the intent and purpose of Rule 44.1.

*          *          *

---

[22] While Rule 44.1 arguably places a burden on a party invoking foreign law to provide notice to an opposing party and to the court that foreign law will be at issue, the Second Circuit has expressly held that a court "need not…avoid[] a full analysis" of foreign law "simply on the basis of an inadequate submission by one party." *Curley v. AMR Corp.,* 153 F.3d 5, 13 (2d Cir. 1998). "The conventional notions of burden of proof, therefore, are anathema to the underlying purpose of Rule 44.1—to assist the court in its search for foreign law.  Consequently, [the Second Circuit] views Rule 44.1 as placing a collective responsibility on the parties to render such assistance." *In re Ishihara Chem. Co,, Ltd.* 121 F.Supp.2d 209, 217 (E.D.N.Y. 2000), *vacated on other grounds by In re Ishihara Chem. Co.,* 251 F.3d 120 (2d Cir. 2001).  *See also Bugliotti v. Republic of Argentina,* 952 F.3d 410, 414 (2d Cir 2020) (In conducting an inquiry into foreign law, "[t]he [] court's task…is to arrive an independent interpretation of the governing [foreign] law, aided by the most persuasive[] materials available to it.").

## CONCLUSION

For all the foregoing reasons, the Court should reverse the decision and order of the

bankruptcy court and remand to that court for further proceedings not inconsistent with its

decision and order.

Dated: Cornwall-on-Hudson, New York
       March 3, 2022

Respectfully submitted,

KARLINSKY LLC

By: /s/ Martin E. Karlinsky
        Martin E. Karlinsky, Esq.
        Bonnie H. Walker, Esq.
103 Mountain Road
Cornwall-on-Hudson, New York 12520
Office:  646.437.1430
Mobile:  917.623.9102
martin.karlinsky@karlinskyllc.com

*Attorneys for Plaintiff -Appellant Eitan Liel*

**Certificate of Compliance with Type-Volume Limit,
Typeface Requirements, and Type-Style Requirements**

Martin E. Karlinsky, a member of the bar of this Court and counsel to appellant on the within appeal, hereby certifies, pursuant to Federal Rule of Bankruptcy Procedure 8015(h), that this brief complies with the word limitation of Rule 8015(a)(7)(B), excluding the items enumerated in Rule 8015(g)(1)(A).

This computer generated brief was prepared using a proportionally spaced typeface.

> Name of typeface:  Times New Roman
>
> Point size:  12 (footnotes, 11 pt.)
>
> Line spacing:  Double (footnotes multiple 1.15 line spacing)

The total number of words in the brief, inclusive of point headings and footnotes but exclusive of pages containing the table of contents, table of authorities, proof of service, certificate of compliance, or any authorized addendum is 11,501, as counted using the word count feature of Microsoft Word, and 841 lines, also as counted by the word count feature.

Martin E. Karlinsky

Dated:  March 3, 2022